**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**CHRISTOPHER TESS,**

**Plaintiff,** **CIVIL ACTION NO. 15-CV-10791**

**vs.**

**MAGISTRATE JUDGE MONA K. MAJZOUB**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**
**_____________________________________/**

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [12] AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [15]**

Plaintiff Christopher Tess seeks judicial review of Defendant the Commissioner of Society Security's determination that he is not entitled to Social Security benefits for his physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 12) and Defendant's Motion for Summary Judgment (docket no. 15). With consent of the Parties, this case has been referred to the undersigned for final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Docket no. 14.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Opinion and Order.

## I. Procedural History

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on March 18, 2013, alleging that he had been disabled since October 17, 2012, due to a

spinal impairment and affective and anxiety disorders.[1] (*See* TR 10, 13.) The Social Security Administration denied benefits. (*See* TR 157.) Plaintiff requested a *de novo* hearing, which was held on July 16, 2014, before Administrative Law Judge (ALJ) John Dodson, who subsequently found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 10-19.) The Appeals Council declined to review the ALJ's decision, and Plaintiff commenced this action for judicial review. The parties then filed their instant Motions.

## II. Plaintiff's Testimony, Medical Evidence, and Vocational Expert Testimony

Plaintiff (docket no. 12 at 12-17), Defendant (docket no. 15 at 5-13), and the ALJ (TR 14-17) each set out a detailed factual recitation with regard to Plaintiff's medical record, Plaintiff's hearing testimony, and the VE's testimony. Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that although the parties and the ALJ each focus on different statements and records, there are no material inconsistencies between their recitations of the record. Therefore, the Court will incorporate these factual recitations by reference and will include comments and citations as necessary throughout this Opinion and Order.

## III. Administrative Law Judge's Determination

The ALJ found that Plaintiff met the insured status requirements of the act through December 31, 2012; that he had not engaged in substantial gainful activity since October 17, 2012, his alleged onset date; and that he suffered from severe "degenerative disc disease and affective and anxiety disorders." (TR 13.) The ALJ then found that his impairments did not meet or equal

[1] Plaintiff filed an earlier application for benefits, which was denied in a decision dated October 16, 2012, the day before his current alleged onset date. (TR 77-94.)

those listed in the Listing of Impairments. (TR 14-16.)

Next, The ALJ found that Plaintiff's allegations regarding the extent of his symptoms were not wholly credible and that Plaintiff could perform light work with the following additional limitations:

> [H]e is limited to unskilled work which would avoid concentrated exposure to hazardous heights or dangerous machinery; he cannot climb ropes, ladders, or scaffolds but is capable of performing all other postural movements on an occasional basis; can engage in only occasional superficial interactions with the public and occasional interactions with co-workers and supervisors; cannot engage in production rate standards; and needs to be able to alternate between sitting and standing positions up to three times an hour.[2]

(TR 16-17.) The ALJ then determined, in reliance on the VE's testimony, that Plaintiff was capable of performing work as an office helper, assembler, or inspector/sorter. (TR 18-19.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act from October 17, 2012, through the date of his decision. (TR 19.)

## IV. Law and Analysis

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's

---

[2] In *Drummond v. Comm'r of Soc. Sec.*, the Sixth Circuit held that social-security claimants and the Commissioner are barred by principles of res judicata from relitigating issues that have previously been determined. 126 F.3d 837 (6th Cir. 1997). Where limitations have been found, the Commissioner is bound by the principles of res judicata to accept those limitations unless there is new and material evidence of changed circumstances. *Id. at 842*; SSAR 98-4(6). And where a claimant who has previously been adjudicated "not disabled" seeks to avoid application of res judicata, he must provide proof that his condition has worsened since the date of the prior decision to such a degree that he is no longer capable of engaging in substantial gainful activity. *See Vesey v. Comm'r*, No. 11-10967, 2012 WL 4475657, at *10 (E.D. Mich. Aug. 6, 2012). Noting his responsibility under *Drummond*, the ALJ found that Plaintiff presented new records and opinions with regard to both his physical and mental impairments. (TR 14-15.) Moreover, the ALJ determined a new RFC based on this new evidence. The ALJ's analysis and determination of that new RFC is considered herein.

final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B. Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C. Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the

pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be reversed or remanded because (1) the ALJ improperly discounted Plaintiff's credibility due to (a) statements made in his prior application for benefits, (b) a minimal work record, and (c) a lack of mental-health treatment prior to November 2011; (2) the ALJ improperly weighed the medical opinions of record, including (a) Plaintiff's six-month parking permit, and (b) check-sheets submitted by his treating physicians; and (3) the ALJ failed to pose complete and accurate hypothetical question to the VE where the ALJ failed to include any limitations related to concentration, persistence, or pace. (Docket no. 12.)

**1. The ALJ's Credibility Determination**

Plaintiff first takes issue with the ALJ's determination that Plaintiff's complaints were not fully credible. "An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that

weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

The ALJ found that Plaintiff was not entirely credible for the following reasons:

- There is "no history of any mental health treatment prior to November 15, 2011," which was "one month after the claimant had filed his previous applications for disability on October 17, 2011." (TR 14-15.) The ALJ noted that this lack of treatment and a lack of any hospitalization "fail[ed] to support the marked and extreme level of impairment cited by the treating sources." (TR 15.)

- When Plaintiff filed his previous applications for benefits, Plaintiff had "ceased working with the state employment people because he wanted to concentrate on child care for his son" and that "his hobbies included playing hockey, working on the computer, and writing music." (TR 15.) The ALJ found that "[t]hese records [were] suggestive of a possible secondary gain motive" and that "playing hockey is not

consistent with a total [in]ability to leave one's house." (TR 15.)[3]

- Plaintiff's medical records indicate that his "pain had essentially resolved with [a] March 28, 2013 laminectomy surgery," and he did not complain of any pain until July 18, 2014, "which was actually after the administrative hearing." (TR 17.)

- "As noted previously by Judge Scallen, the claimant had indicated at the time of the prior hearing that he engaged in child care, cooking, housecleaning, laundry, shopping, reading, playing board games, watching 'reality TV,' working on his computer, and going to church." (TR 17.)

- "Judge Scallen also noted that there was a lack of objective documentation of any focal sensory, motor, or reflex deficits." (TR 17.)

Plaintiff contends that these findings are inappropriate as the relevant time period for a disability determination did not begin until October 17, 2012, after ALJ Scallen issued his determination. Defendant impliedly acknowledges that the ALJ may have erred if he had considered this information as substantive evidence regarding Plaintiff's disability application, but Defendant argues that the ALJ was permitted to consider this evidence when determining Plaintiff's credibility. (Docket no. 15 at 15-18.)

The Court agrees with Defendant that the ALJ did not err by considering this information when determining Plaintiff's credibility, and Plaintiff has not provided any legal argument suggesting otherwise. Nevertheless, the Court finds the ALJ's credibility analysis insufficient. Nowhere in his decision did the ALJ consider Plaintiff's current application or any of the credibility factors noted above. Instead, with the exception of discussing Plaintiff's June 2013 back surgery, the ALJ merely rehashes ALJ Scallen's credibility finding and adopts it as his own. Although the ALJ acknowledged the receipt of new evidence and determined a new RFC, the ALJ

---

[3] The Court notes that this finding (and the previous finding) are discussed during the ALJ's Step 3 determination with regard to whether Plaintiff's impairments meet or equal any of the listed impairments. The ALJ indicates at Step 4 that these "elements of possibly secondary gain are again noted," impliedly referring to his discussion at Step 3.

failed to discuss what effect this new evidence may have had on Plaintiff's credibility. It belies logic to determine that Plaintiff's RFC has changed since the prior decision and then find that his prior application for benefits impugns his credibility. Thus, without further analysis by the ALJ, the Court is unable to determine whether his credibility findings are supported by substantial evidence. Therefore, the Court will remand this matter for further discussion of Plaintiff's credibility.

**2. The ALJ's Consideration of the Medical Opinions of Record**

Next, Plaintiff asserts that the ALJ erred by improperly weighing the opinions of Dr. Holly Gilmer (presented as evidence in the form of a disability parking permit) and Suzanne Johnson, LMSW, Dr. Philip MaharajPrasad, and Dr. Sarva Sarvananda (provided as three checklist forms). Plaintiff contends that the ALJ erred by rejecting these opinions and adopting the opinion of the state agency physician, Dr. Leonard Balunas. (Docket no. 12 at 21-25.)

The ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). But it is equally well settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician. *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008). Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)). The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant. 20 C.F.R. § 404.1527(c)(1). The opinion of a state agency medical or psychological consultant is

reviewed in the same manner as is the opinion of a nonexamining physician or psychologist. 20 C.F.R. §404.1527(e).

Additionally, the Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)). If the opinion of a treating source is not afforded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544 (citation omitted). Even then, a finding that a treating-source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4. Notably, though, "it is not the Court's job to conduct a *de novo* review of the evidence or to rubber stamp the ALJ's decision. The Court must ensure both that the ALJ applied the correct legal standard and that his decision is supported by substantial evidence. *See Christephore v. Commissioner of Social Sec.*, No. 11-13547, 2012 WL 2274328, *6 (E.D. Mich. June 18, 2012) (Roberts, J.)

Nevertheless, the Sixth Circuit has upheld the decision of an ALJ which gave less than controlling weight to a treating physician without specifically analyzing the factors set forth in 20 C.F.R. § 404.1527(c) where the ALJ provided "good reason" for the decision. *See Infantado v. Astrue*, 263 Fed.Appx. 469, 473-74 (6th Cir. 2008). There is no per se rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c)(2)-(6). *Norris v. Comm'r*, No. 11-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)). Moreover, an ALJ's failure to discuss the factors of § 1527(c)(2)-(6) may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [Section 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r,* 195 Fed. Appx. 462, 470 (6th Cir. 2006) (citing *Wilson v. Comm'r,* 378 F.3d 541, 547 (6th Cir. 2004)).

With regard to Dr. Gilmer's provision of the parking permit for Plaintiff, the ALJ noted as follows:

> Holly Gilmer. M.D., did provide the claimant with a temporary disability parking permit on June 27, 2014, but this was clearly not an endorsement of long-term disability as it was for only six months. This opinion is given considerable weight but is not supportive of the claimant's disability claim.

(TR 17.) On the form itself, Dr. Gilmer noted that Plaintiff had "[a]n inability to walk more than 200 feet without having to stop and rest." (TR 454.) Plaintiff argues that the ALJ failed to consider that "Dr. Gilmer could renew the permit or extend the permit after the 6 month time period had lapsed," but as Defendant notes, any such argument is speculation. Plaintiff bears the

burden of proof at Step 4, and Plaintiff provided no evidence to suggest that Dr. Gilmer intended to extend or renew information on the permit form. Thus, the ALJ did not err in his consideration of Dr. Gilmer's opinion.

With regard to the opinions offered by Ms. Johnson and Drs. Prasad and Dr. Sarvananda, the ALJ and the parties noted that their opinions were substantially similar. The ALJ states that the forms "indicate that the claimant has marked deficiencies in activities of daily living, extreme social limitations, frequent deficiencies of concentration, persistence, and pace, repeated episodes of decompensation, and a complete inability to function outside of his house." (TR 14.) the ALJ then affords these opinions "very little weight" because they are "inconsistent with the claimant's abilities to attend his medical appointments or the actual treatment records from Macomb County Mental Health." (TR 14.) Defendant points to the ALJ's findings and argues that "there do not appear to be any clinical signs of disabling mental illness in the record during the relevant period." (Docket no. 15 at 20.) But the ALJ made no such statement, and Defendant's post-hoc rationalization is insufficient to support the ALJ's decision. *See Christephore v. Commissioner of Social Sec.*, No. 11-13547, 2012 WL 2274328, *6 (E.D. Mich. June 18, 2012) (Roberts, J.) ("[I]t is not the Court's job to conduct a de novo review of the evidence or to rubber stamp the ALJ's decision. The Court must ensure both that the ALJ applied the correct legal standard and that his decision is supported by substantial evidence. Moreover, it is the ALJ's rationale that is under review, not defense counsel's.") Plaintiff, however, contends that the ALJ's reliance on Plaintiff's ability to attend his medical appointments is not a valid reason to discount a medical opinion. (Docket no. 12 at 21.) The Court agrees. More importantly, though, while the ALJ's ultimate determination regarding these opinions may not have been in error, his cursory discussion

of the treating physicians' opinions is insufficient. Therefore, the Court will remand this matter for further consideration of the medical opinions of record.

### 3. The ALJ's Assessment of Plaintiff's Mental RFC with Regard to Concentration, Persistence, or Pace[4]

Finally, Plaintiff argues that the ALJ erred in the development of his mental RFC when he failed to include any limitations with regard to concentration, persistence, or pace. (Docket no. 12 at 27.) When, as he did here, the ALJ makes a finding that a claimant has moderate limitations in concentration, persistence or pace, the ALJ must account for such limitations in the claimant's RFC and in his hypothetical questions to the VE. *See Tinker v. Astrue*, No. 08-11675, 2009 WL 3064780, at *8 (E.D. Mich. Sept. 22, 2009). Findings of moderate limitations in concentration, persistence, or pace do not necessarily preclude "simple, routine, unskilled work." *Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844-BC, 2010 WL 3905375, at *2 (E.D. Mich. Sept. 30, 2010) (citations omitted). Such limitations may, however, result in the claimant being unable to meet quotas, stay alert, or work at a consistent rate of speed. *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D. Mich. 2005).

The ALJ assessed Plaintiff's mental RFC as follows:

> [H]e is limited to unskilled work . . .; can engage in only occasional superficial interactions with the public and occasional interactions with co-workers and

[4] Although Plaintiff frames this argument in terms of the ALJ's questions to the VE, as Defendant notes, and as this Court has discussed numerous times when presented with such an argument by Plaintiff's counsel, an ALJ need only include in the hypothetical questions to the VE those limitations that the ALJ finds to be credible; that is, the ALJ need only ask the VE hypothetical questions related to limitations that the ALJ also includes in the plaintiff's RFC. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Here, the ALJ included all of the limitations that he found credible in Plaintiff's RFC; and he included all of those same limitations in his hypothetical questions to the VE. Thus, in substance, Plaintiff's argument is not a challenge to the ALJ's questioning of the VE; it is, instead, a collateral challenge to the ALJ's RFC finding. The Court will, therefore, consider it as such.

supervisors; [and] cannot engage in production rate standards . . . .

(TR 16.) As noted above, a limitation to non-production-rate work is a common and adequate limitation for those persons who suffer from moderate difficulties in concentration, persistence, or pace. *See Edwards, supra*. Moreover, Plaintiff does not explain what additional limitations the ALJ should have imposed. Therefore, Plaintiff's argument fails in this regard.

Accordingly, **IT IS ORDERED**, that Plaintiff's motion for summary judgment [12] is **GRANTED IN PART AND DENIED IN PART** and that Defendant's motion for summary judgment [15] is **DENIED**. The Court will remand this matter for further consideration as discussed herein.

Dated: February 5, 2016

s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Order was served upon Counsel of Record on this date.

Dated: February 5, 2016

s/ Lisa C. Bartlett
Case Manager